The last matter on the argument document today is Energy Coal v. CITGO. Mr. Miller? Good morning, Your Honors. I'm McHale Miller, representing Energy Coal. As you know, this case involves the dismissal under 12B-6 of Energy Coal's suit against CITGO. I think in large measure, if not totally, the case turns on choice of law. The question of whether an SBE was properly alleged and pled under Louisiana law was raised in the district court but not addressed. It was raised as a secondary line of attack by the appellees here. So I'm going to start by focusing on our standard of review in a 12B-6 case. It's, of course, the no deference given to the facts or legal analysis of the district court. And the case will be governed by the Twombly plausibility standard. But I think the Lorman case decided by the Fifth Circuit in 2009 bears heavily here because that case helped explain Twombly, which I frankly find a little hard to decipher. And it explains that pleading facts that contain enough factual matter to raise a reasonable hope that discovery will reveal relevant evidence of each element of the claim is all that is needed. A district court case following Lorman, Diamond Services, dealing with the SBE matter and talking about the factual details of the factors, the 18 factors listed in the Green case, point out that these Green factors are such that they're almost always exclusively within the knowledge of the defendant, the alleged SBE member. And for that reason, these facts typically can only be obtained by discovery. And so in the Diamond Services court's analysis, if these, if such particular, such specificity as demanded by Sitko in this case were indeed the standard, no case involving the SBE matters and perhaps even veil-piercing and alter ego could ever survive a motion to dismiss. And so that's why that court took the view that discovery was required. Now, this case is unique in large measures. Maybe unique's too strong a word. But it's the first time I've ever been able to draft a petition, because this started in the state court system, where I had a series of admissions from the defendant. We looked in Payda Vesa, who is the parent, ultimately the parent company of Sitko, and we found their financial and operational information report of 2007 and their consolidated financial statement of 2013. And that petition of ours, which alleges some very specific facts, is taken from those financial statements, which strikes me as being admissions, and therefore the court's decision to dismiss. But none of this matters if Delaware law applies and the single business enterprise theory is out the door, which is what the district court found. Correct. So you might want to address the choice of law. And it seems like that's what we're reviewing here. Well, where I was leading with this, though, is that those financial statements gave the admissions to plead a claim. But more than that, they also added tremendously, if not more, because the Article 3515 approach requires, as the first step in the process, identifying the policies. We'll come to that later. But in the analytical process, the first step is to examine the relationship of the candidate states, the involved states, to the parties and then to the dispute. So if you go through the relationship of Delaware to the parties, you'll see that Delaware's relationship is narrow. It consists of the fact that Delaware is incorporated in Louisiana. But Delaware is a state devoid of any other contact, as far as we can determine, at this stage with CITGO. But the whole issue is whether the corporate entity of CITGO should be ignored or merged with PETAVASA. So why doesn't Delaware have a strong interest in its corporations, the legal status of its corporations? There are several answers to that. One of the answers is what I was leading to there. The only contact is that state of incorporation. And when we look at something like the restatement of law, Section 302, which admittedly is a common law interest analysis concept, it does point out that when dealing with internal affair matters, that normally the choice of the state of incorporation applies. But when another state has more significant contacts, then that is not the case. And moreover, Comment G to the restatement makes abundantly clear, in fact, it expressly states, that if the only contact of the state of incorporation to the incorporation is the fact of incorporation, a formalistic contact, and there are no practical operational contacts, then rarely should the law of state of incorporation apply. Rarely. But that's when, you know, it's a personal injury case. The law governing negligence should, of course, why should that be the state of incorporation? But here it's an issue about the corporate entity. Are there any Louisiana cases you can cite, choice of law cases from Louisiana courts that have said a corporate formation issue is not the right to be governed by the state of incorporation? There is. I cited it in my brief. To my chagrin, it won't pop up to me right away, but it was a little bit of a different flavor. It was a case wherein the court was looking to see if a particular defendant was subject to in personam jurisdiction. The question then became whether the other companies that were part of the alleged SBE, whether their contacts could be imputed to this other company. And the court found that yes, indeed, notwithstanding state of incorporation, the court would look into the green factors and decide whether or not this was a situation where the Louisiana law should apply. The court did apply Louisiana law, and it attributed the contacts so that the defendant was held. I can look the case up, perhaps, when I sit down and listen to the other side, and give it to you. But if I may. Noram Drilling Company. That was a Louisiana appellate court case in 2013. It applied the law of the state of incorporation to determine issues of corporate structure where the single business enterprise theory was at issue. Why isn't that controlling? Which one was that, Your Honor? It's Noram Drilling. Noram Drilling. Well, there are any number of things we can say about Noram, but I think most particularly it did not do a true 3515 analysis. In that case, it was a breach of contract matter, and that's governed by another article, and that article talks about place of contracting, place of negotiation, and the like. And in that case, the plaintiff and all defendants were Texas corporations. The proposed SBE member was a Texas corporation. Their offices were in Texas. They did business in Texas. The contract was negotiated, drafted in Texas. The contract was supposed to be performed in Louisiana, but the case was a breach of contract, so there was never any performance in Louisiana. The court found that under those circumstances, Texas law should apply, and in doing so, the court did rely heavily on QuickKick, which was a pre-Book IV opinion back in 1974 that was turning on interest analysis and really has no bearing on our situation. Why isn't this court, this tertiary court, bound by Patent v. Thoroughbred, which is so that the law, the state of incorporation governs the determination of when to pierce the corporate bail, which is what we're talking about. I think the answer there is a bit of an offshoot of what I was trying to answer a little earlier. Patent does not do a 3515 analysis, and we must keep in mind that this is a code state, and you must look at each choice of law case under its own particular facts. It's a unique entity and must be examined. In Patent, they did not conduct any of the analysis. They didn't compare any of the relationships of the parties to the states, didn't compare the relationship of the parties to the dispute. The court just followed QuickKick, and I think may have been Norham, I can't recall, maybe San Francisco Estates, and therefore basically followed a Hornbook rule that is completely divorced from what this code demands of the case. The case is just not well considered, frankly. So you're telling for us to look at the code, and the code says you balance each state's interest in the issue. Isn't it a problem for you that Louisiana's recognition of the single business enterprise theory isn't even clear? I mean, the state Supreme Court's never acknowledged it. There's some disagreement in the intermediate appellate court. So isn't the questionable validity of the single business enterprise theory in Louisiana, isn't that a problem in showing Louisiana has a strong interest here? Respectfully, Your Honor, I disagree. The Brown decision of the Louisiana Supreme Court expressly acknowledged the doctrine and spoke of it in favorable terms. It did not apply it because of the situation, but it spoke of it favorably. It certainly didn't criticize it. As to the Louisiana appellate courts, the only appellate court decision, to my knowledge, out of the 30-plus decisions that have addressed the doctrine that criticizes the doctrine is Judge Libideau's case, again, the name of which escapes me. But that very, I said Libideau, Judge Fallon's case. But that very same court, I think 10 years later, maybe after he had digested Book 4 and 3515 better, he turned right around and in the Chinese drywall case, he applied SBE like it was the best thing around since sliced bread. Now, but you know, going back a little bit to your question, the critical point here, once we do our analysis of the relationship of the parties to each state and the relationship of the parties to the dispute, which is all covered in my brief and I know I won't have time to get that in here, but when we come to the comparative analysis, that's where I think CITGO is completely on the short end of the straw. Because when we look at the situation, what is the policy of Delaware at stake here? It's their policy of wealth building to encourage investment and facilitate that by limited shareholder liability. So when I'm an investor, I put up my, let's just pick a number, $100,000 to start the corporation. If the corporation incurs a debt of $1 million, I lose my $100,000 but no more. I just lose my investment. That encourages investment. And Louisiana has exactly the same policy. We even have positive law on the subject. But having said that, Delaware in the Mabin case, cited in my brief, created two exceptions to this wealth building policy, namely veil-piercing and alter ego. And the reason for that, or better put, the policy behind that, achieving equity, avoiding injustice. And what does Louisiana do? We have those same two exceptions, veil-piercing and alter ego. And why? Achieving equity and preventing an injustice. We create a third exception, an exception that really focuses more on the operational aspects and the control aspects of a group of companies that join their resources together, integrate them, just like Peta Vesa did, as they say in their statement, integrate them vertically. And then Peta Vesa controls the show thereafter. So the point is, what really is the impairment to Delaware policy of wealth building to apply a third exception when Delaware has already applied two? They have their crack in their veneer. They have opened the door. So I'm not suggesting that we modify Delaware law, we certainly can't do that, but I'm suggesting that applying Louisiana law under that circumstance does not do tremendous harm to a policy that has been self-impaired. The courts of Delaware impaired that policy by deciding veil-piercing and deciding alter ego exceptions, and they did it for all the right reasons, to do the right thing. And Louisiana takes it a step further and asks the three members of this panel to do the right thing. Let's achieve comparative incorporation. This is nothing of any concern here. Delaware has no contact with this dispute. They have no contact with CITCO other than incorporation. And it just it makes no sense to apply Delaware law here. If you apply Delaware law, let's look at the impairment to Louisiana law. It's devastating. It's destructive. There can be no justice. The contract had nothing to do with Louisiana. I'm sorry? It was going to be performed in South America with an Italian company and an Israeli company. That's right, but we have two issues. I don't think any state is that strong an interest in it. It's not interest analysis, it's comparative analysis, comparative impairment. And the point is, under the Book 4, Article 3515 approach, as made very clear by Professor Simeonetti's comments, this is a topic of law where each issue has to be analyzed separately. And if you pick two different laws, you're doing nothing radical, nothing out of the ordinary. It's so ordinary, it's even got a fancy French name, dépassage. So just finish the sentence or? Sure. I thought you were finished. Oh, I'm sorry. You're veering off into French. So I think I've lost my train of thought anyway. I'll sit down. But I could say a lot more. Counsel Eberl. Good morning, Your Honors. May it please the Court. Nate Eimer on behalf of Eppley Sickle Petroleum. I think counsel was correct when he started and then went a bit astray. The central issue here is whether Judge Walter correctly analyzed Section 3515 in concluding that Delaware law should apply on the conflict of law analysis. And that's really the issue before this Court. As Your Honor said before Judge Clement, this Court answered that question 14 years ago in the Pateen Thoroughbred case, concluding that Louisiana Supreme Court would most likely conclude that the law of the place of incorporation would always apply to piercing cases. And it did that in reliance on three cases. One was the Quick Kick case that counsel referred to that was prior to the enactment of 3515, but at the time the Louisiana Supreme Court had a common law rule, which is essentially the same. And then two federal lower court cases from Louisiana, San Francisco Estates, which was also an SBE, a contest between an SBE claim and an alter ego claim. And the Power Up case that was decided in the Eastern District of Louisiana after the enactment of 3515, and which included a reference to 3515, so the district court was well aware of 3515 when that case was enacted. And what's happened since the Pateen holding, global oil was decided by the Eastern District of Louisiana. It analyzed 3515. That's referred to in the opinion. It was also a contest between an SBE claim and another State law in concluding that the law of the state of incorporation would govern. Gulf Fleet Holdings, a very thorough examination by the Bankruptcy Court in the Western District of Louisiana in 2013, applying the law of the state of incorporation. And then the case Your Honor referred to, Noram Drilling, from Louisiana Court of Appeals, did analyze 3515. There's a reference to it in the opinion. And it was also a contest between an SBE claim and a piercing claim holding that the law of the state of incorporation governed. And there's been no case cited that I'm aware of holding that an SBE claim is prevalent over the law of the state of incorporation when deciding a piercing issue. Even if we were to ignore all of this history and this Court's prior ruling in Pateen, we'd get to Judge Wiener's opinion in Marchesani for how to analyze the 3515 claim. And so if we were even starting from scratch, we'd come back to the same conclusion, because the Court there set forth a four- or a six-factor test for deciding when 3515 would apply. And those factors truly would point to Delaware. One would be the justified expectations of the parties. Clearly here, Energy Coal, an Italian corporation, could have had no expectation that Louisiana law was going to apply to this. There's no reference to Citgo in the contract. The performance of the contract had nothing to do with Louisiana. The counterparty to the contract was in Venezuela, a South American. It provided for Venezuelan law to govern its contract. It provided for an International Chamber of Commerce arbitration for resolving disputes under four of the contracts, and judicial resolution in Venezuela for the other four of the contracts. There's no reference to anything going on in Louisiana. Citgo, of course, would have been assuming that Delaware, its place of incorporation, would have been the governing law. And so the justification of the parties here clearly would point to Delaware, not Louisiana. Minimizing adverse consequences of subjecting parties to multiple laws is another factor that was pointed out in the Marchesani case. Here, this is exactly the problem that Citgo faces, having multiple states deciding the appropriateness of its corporate structure. So that factor points to us. Detouring unlawful conduct is irrelevant here. Repairing the consequences of injurious acts, I don't see where that comes in. And then there were two other factors that the Court listed. One was discouraging forum shopping, and that's a key one here. There's no way in the world this case should be in Louisiana to first start with. Energy Coal brought it here because it's trying to take advantage of the SBE doctrine. And that makes me wonder, and this is sort of moot, because by appearing and litigating the case, you waive challenges to personal jurisdiction. But why didn't you challenge personal jurisdiction? I mean, the events didn't happen here, which means there's no specific jurisdiction. And Citgo's not at home here. Their headquarters is in Houston. Why didn't you challenge that issue? I think, Your Honor, because we're qualified to do business in Louisiana. So we assumed we were subject to general jurisdiction in Louisiana as a result. And I think that was the basis for it. But perhaps we could. I think the new Supreme Court cases on that say you pretty much have to be headquartered there, but. I think so. But I think at the time that this was commenced, I don't think we had that precedent available to us. You've got all those filling stations, right? Correct. There's lots of them in Louisiana. Yes, Your Honor. So I think all of the Marchesani factors, if you were starting with a clean slate and didn't have the Pateen case in all of the other Louisiana and Eastern District and Western District cases, would point to exactly the same result that every court that analyzed this. Counsel pointed to restatement section 302G as somehow giving a different result, but it doesn't. 302G really talks about the situation and it gives a two-part test where the forum law might apply, where the relevant local law rules of the forum state embody an important policy of the state. Here, that policy may be important to Louisiana, but certainly isn't important to this dispute. But the critical is the conjunctive and the matter involved does not affect the corporation's organic structure or internal administration. And that's certainly true here, and that's why every court that's addressed this issue has said that the state of incorporation applies, because it affects the internal structure and organic structure and internal administration of the case. So I think it's beyond doubt, actually, that Delaware law should apply. It's uncontested that there's no claim under Delaware law. Delaware law requires fraud or something like it. There's nothing, no allegation of fraud or something like it here. And so I think there's absolutely no contest once we get past the choice of law question as to whether or not Judge Walter's opinion is correct on the Delaware law question. And so that part I'm passing by. If the Court's interested, I'd be glad to talk about the SBE as an alternative theory, but I don't think the Court's even going to get there. So I'm not sure if Your Honor, there's one case in particular from the Fifth Circuit that I think really is instructive about this whole matter, and it's Arklatex Timber. It was decided 482 F. 3rd 319. It's cited in our briefs. It's from 2007. And what's interesting to me about that case, Your Honor, it's under the SBE, and we're never going to get to the SBE, but if you ever did, that case is about a secured creditor that had a security interest in one company, Arklatex, but wasn't happy with that security interest and wanted to extend its security interest into two sister corporations. And so the question was trying to use the SBE theory to get access to the sister corporations, and it alleged some of the same things, common holdings. It was even worse because it said that the sister companies were shell corporations and so forth. And General Electric Company had a security interest in those two sister corporations. And the district court refused to allow the secured creditor there, People's State Bank, in the Arkla case, to even put on evidence of an SBE, saying it was so prejudicial and the claim was basically frivolous. In this court, this court actually reaffirmed that an SBE case, much like a piercing case, had to have some element of fraud or other inequity. And Energy Coal hasn't pointed to any inequity that's coming out in this situation that would give it any kind of an SBE claim. And there's really two quotes that I might make from the court that, if you don't mind my reading them, it said, nowhere is there any allegation, this is in the Arklatex case, or indication of any public inconvenience, wrong, fraud, crime, or anything else of that doctrine to achieve equity. And then it went on and said, there's no allegation in this case or showing that either secured creditor was damaged, disadvantaged, delayed in the enforcement of its rights against the affected assets of the juridical entities by their intracorporate or juridical person practices or business arrangements. In other words, there was no injury to People's State Bank as a result of the structure of these three companies. People's State simply seeks to utilize the single business enterprise theory to create for itself an additional security interest for which it did not contract. And that's exactly what's going on here. Energy Coal could have gotten a security interest from CITGO or could have gotten other assurances for other members of this PETAVASA group. It's a sophisticated, knowing company that entered into hundreds of millions of dollars with the contracts. And now it's claiming, well, it doesn't like what it can — the party it contracted with. But it could have done anything else. And that's exactly what this Court refused to do in the Arklatex case. This is a contract case. They are sophisticated parties. They could have gotten guarantees if they wanted them from CITGO, or they could have attempted to. They could have gotten guarantees from other companies. They could have done lots of other things to protect themselves, and they did none of that. Instead of they come into this Court and say there's some sort of an injustice in the contract they entered into. And I think this Court should turn its shoulder on that argument just as it did in Arklatex. Thank you, Your Honor. Thank you. Mr. Miller. Counsel, the CITGO raises a very important point that I couldn't get to, the equivalency principle that's discussed at length in both of our briefs. Under Louisiana law, a corporation, by becoming authorized to do business in Louisiana, by obtaining that certificate under 12.301 of the Louisiana revised statutes, by virtue of section 306 of that same statute, is entitled to all of the benefits of being a Louisiana corporation. But there's a reciprocal obligation there. That corporation is subject to all of the liabilities and all of the duties. And the case law discusses this as the equivalency principle, such that being authorized to do business in a state has the same effect as being incorporated there. So the point is, if we were to look at this as a mathematical equation, and we started to list our factors to use in our comparative impairment analysis, we would put Delaware, state of incorporation, on this side of the and then all of the ten other things I have in my favor and nothing else on their side. And we would take a big red X and we'd go through SOI, state of incorporation, and we'd put another X over here, through authorized to do business. They cancel each other out. We're starting at ground zero in this case. And CITGO, therefore, has no contacts with reality. And I just suggest to this panel that this cannot be ignored. The district court ignored it, but this is critical to the outcome of this case. The cases that are discussed, it's the same old thing. The Goodman case, it was a Hornbook case, no 35-15 analysis. The Global Oil case, one of my favorite judges, Judge Barbier, that case is bizarre. The parties didn't even brief the policies of the state. The judge found that the only corporation that had any ties was Texas. The other candidate state wasn't even a candidate, so of course he applied Texas law. None of these cases really weigh in on what has to be done here. This is a codal state, and every case must be looked at on its own. And just look at our briefs. It's overwhelming. This company, CITGO, does extensive business in Louisiana, in Lake Charles, billions of dollars a year for 20-plus years. They've been reaping the benefits of the services of the city of Lake Charles, the parish of Kalkazoo, and the state of Louisiana. They're sucking in all these benefits. They're helping the local economy also, admittedly, but they're benefiting. Now it's time to pay the other side of the equation of 12-306. They've got to respond. And if there's any doubt, well, I guess I should point something else. There's some comment that there's no inequity here. Well, I don't think Energy Coal would sit very well with that. They're out of $186 million because the SBE, not just Petroleo, but the SBE did not pay the debt. The work done on that facility benefited everybody in that SBE. That's the very nature of an SBE. And it benefited CITGO in particular. And that's so clear from the allegations of our petition because it says that Petroleo, that Peta Vesa is an oil company that covers all facets of the oil business. It says that Peta Vesa does its business through its subsidiaries. It says Peta Vesa is integrated vertically to include the downstream side, Petroleo, the I'm sorry, the upstream side, Petroleo, the downstream side, CITGO. It says, all alleged and all out of the financial statement, that Peta Vesa does business in Louisiana through CITGO. We will prove at trial that Peta Vesa is a holding company and Petroleo is the big man behind the scene. They're running the show, or at least a common director and officer between the two companies is. And on top of that, in addition to this extensive business, it's extensive enterprise business. It's not just any old business. And that gives Louisiana one a heck of an interest in this. And on top of that is this benefit that I was leading up to. You've had everything I've said up to now. And then we know added to the allegations is that Petroleo ships oil to CITGO. We know also from the allegations that Petroleo through our company, Energy Coal, refurbished the facility, the Petroleo facility in the Jose Complex, to keep it working. And it has to keep working. Otherwise, it can't send oil to CITGO. And if it doesn't send oil to CITGO, CITGO is out of business. Now, how do I know that? Mary Landrieu, when she was lobbying against the human I'm sorry. I was just saying we know this because Mary Landrieu, when she was on the Senate Energy Committee, was opposing a bill by the Foreign Relations Committee that was a human rights bill against Venezuela. And that bill would have imposed sanctions. And so Mary Landrieu, with the help of John Breaux, lobbying for a fee of $450,000 from CITGO, tried to block and did succeed in blocking the enactment of that bill with its restrictions. And when the newspapers queried her chief of staff, it was all in Politico.com, the chief of staff of that There's a period in that sentence. Lots of semicolons, so we need a period. All right. Oh, yes. And now according to Politico.com. So we're going to be at recess tomorrow at 9 o'clock. Thank you.